FRANK W. ANDERSON ET AL. v. BOARD OF SUPERVISORS OF ISSAQUENA COUNTY.

1. LEVEE SCRIP. *Issaquena county. Laws* 1850, *p.* 214; *laws* 1857, *p.* 87. *Rights of holders. Subsequent legislation. Laws* 1860, *p.* 434; *laws* 1867, *p.* 241.

   Orders on its treasurer, in payment of work done in construction of levees, issued by the board of levee inspectors of Issaquena county, in 1859, under the act of February 1, 1850 (Laws, p. 214), as amended by the act of November 19, 1857 (Laws, p. 87), are, in their nature, essentially county debts, for the security of which all the lands in the county are made taxable, and the rights of holders of the same are not affected by subsequent legislation providing another debtor and a different security and mode of payment, and making their validity dependent upon new conditions.

2. SAME. *Statute of limitations. Interest.*

   Such orders being, in their essential nature, county warrants, are not subject to the statute of limitations, nor do they bear interest. *Taylor* v. *Chickasaw County,* 70 Miss., 87, cited.

FROM the circuit court of Issaquena county.

HON. W. K. McLAURIN, Judge.

F. W. Anderson and Babette Mayer filed their petition against the board of supervisors of Issaquena county for a writ of mandamus, requiring the board, after allowing to assess and levy a tax, to pay their claim upon two certain orders for five thousand dollars each, dated January 8, 1859, signed by four of the five members composing the board of levee inspectors of Issaquena county, and directed to "R. M. Smith, Treasurer." The orders are made payable on July 1, 1860, "with interest at the rate of ten per cent. per annum until paid." The petition averred that the orders were presented to and registered by said Smith, treasurer, on March 5, 1859, as shown by his certificate indorsed thereon, the same being then accepted by him,

and that said treasurer refused to pay said orders when duly presented to him; that the board of police failed to comply with the law requiring it to assess and levy a tax for their payment; that, on November 1, 1895, said orders were presented to the board of supervisors, the successors of the board of police, for allowance, and the levy of a tax adequate to pay the same, when said board rejected petitioners' claim. It also set up the legislation under which the said orders were issued, referred to in the opinion of the court.

The board of supervisors demurred to the petition on the following grounds:

1. It charges nothing which imputes any obligation on defendant to allow the claim it makes, or to assess and levy a tax to pay it.

2. It shows on its face, by the terms and dates of the acts of the legislature under which it predicates its claim, that the same is barred by the statute of limitations of three years, and of six years and of seven years, and that its cause of action did not accrue within either of said periods.

3. It shows on its face that the claim it set up is in virtue of a contract pursuant to an act of the legislature of said state, of date February 1, 1850, and yet shows that said claim was not drawn on funds then in hand realized from taxes assessed, levied and collected, which is contrary to the powers given by said act or any amendment thereto.

4. The petition shows claims, under the law it cites as their predicate, not against defendants, but claims only asserted as calling on defendants to exercise the taxing power, not in virtue of any contractual relation, but in virtue of an alleged duty to levy and assess a tax because of the result of a contractual relation with certain levee commissioners, but fails to allege the existence of the facts necessarily prerequisite, under the law, to the proper exercise by said commissioners of the power to make any contract, and to issue such orders as devolved on defendants any duty to levy and assess any tax.

5. By an act of the legislature of the state of Mississippi, entitled "An act to aid in repairing and perfecting the levee of the Mississippi river in the counties of DeSoto, Tunica, Coahoma, Bolivar, Washington and Issaquena," approved December 2, 1858, the board of levee commissioners of Issaquena county was suspended from and after June 1, 1859, and was abolished at the expiration of three years thereafter, and the general levee board for all of said counties, created by said act, became bound to pay all the debts of the levee district of Issaquena county, and the board of levee commissioners of Issaquena county were then to make a full report of all their acts to such general board, and the petition in this case does not aver any demand of payment of said general board.

6. There was no authority of law for the two orders mentioned in said petition to be drawn on or accepted by the treasurer of Issaquena county, as charged in said petition.

7. There was no authority in law for Moore, Smith, Wade & Walfour to draw the orders sued on, as charged in said petition.

8. Plaintiff's petition in this cause is based on the charge that the two orders it recites are judgments. If judgments, they were, at most, judgments of the board of levee commissioners, or inspectors, of Issaquena county, which was a special, limited, statutory tribunal created by the acts of the legislature referred to in said petition, and said petition does not aver the existence of these essential jurisdictional facts, which alone arm said board of levee commissioners or inspectors with the power to contract or to issue said orders.

9. The orders set up in plaintiff's petition do not evidence the judgment of any tribunal of competent jurisdiction to authorize their issuance, and said petition counts on no such judgment of any such tribunal adjudicating the validity of the claim upon which said orders were based.

10. The board of supervisors have no power to exercise the taxing power under the act of 1850, referred to in the petition, because the act of 1858, entitled "An act to aid in repairing

and perfecting the levees of the Mississippi river in the counties of DeSoto, Tunica, Coahoma, Bolivar, Washington and Issaquena,'' approved December 2, 1858, abrogated the power of the board of police to levy the tax specified in said act of 1850, and directed that if such a tax had been levied it should not be collected, but in lieu thereof, that the tax prescribed by said act of 1858 should be collected, and said act of 1858 repealed said act of 1850 in its provisions for the payment of the debts incurred by the board of levee commissioners of Issaquena county, and imposed said debts as an obligation upon the levee board created by said act of 1858, in lieu of the county of Issaquena.

11. There was no law in force on December 1, 1869, imposing duty of levying a tax under said act of 1850 on the boards of police, and hence, the boards of supervisors, under the constitution of 1869 and the act, entitled ''An act in relation to boards of supervisors,'' approved June 3, 1870, are not clothed with the power to levy a tax thereunder.

12. The petition does not show any presentment of the orders upon which it is based, for acceptance or payment, according to their terms, or protest.

13. The remedy of petitioners, if any they have, is by a sale, and not by mandamus.

Wherefore, defendant prays judgment that said plaintiffs be barred from further maintaining their aforesaid proceeding, etc.   The demurrer was sustained, and the relators appealed.

*Mayes & Harris*, for the appellant.

The paper in question is not barred by the statute of limitations, for the reason that there has never been a time when any action of debt or assumpsit could have been brought on it, and there are no statutes applicable to it. It was issued under the act of February 1, 1850, page 214. It was not the intention of the legislature, in that act, that the holders of paper of this class should have any claim against the funds in the general

county treasury, or have their scrip paid therefrom. The contracts were special, under a special agency, for a special work; and the claims thereunder were to be audited, on proof, by a special board, and were payable by a special officer, out of a special fund, which fund was to be raised by a special tax, out of the real estate of the county alone, as distinct from the general property. The board of police had no power to audit such claims, nor the county treasurer any power to pay them when audited as the law directed. Nor was there ever a time when a county warrant could have been issued by the board of police for their payment. *Moody* v. *Cass County*, 85 Mo., 477; *Mitchell* v. *Spear*, 39 Ga., 56; *Hospital* v. *Crocker*, 15 Ill., 185; *Clarke* v. *Des Moines*, 19 Iowa, 199; *County* v. *Cox*, 6 Ind., 403; *People* v. *Wood*, 74 N. Y., 371; *Boro* v. *County*, 4 Dillon, 216; *Beaman* v. *County*, 42 Miss., 237; *Supervisors* v. *Klein*, 51 Miss., 807; *Paxton* v. *Baum*, 59 Miss., 531; *Paxton* v. *Arthur*, 60 Miss., 832; *Commissioners* v. *Hemingway*, 66 Miss., 289.

Prior to November 1, 1857, a county could not be sued, nor could any execution be had against it, nor did any statute of limitation apply to a demand against it. *Anderson* v. *State*, 23 Miss., 459; *Carroll* v. *Board*, 28 Miss., 38. On that day, art. 34, p. 419, code of 1857, became operative, constituting the sole authority for suits against counties. Even that section did not authorize suits in all cases. For instance, no actions *ex delicto* (*Sutton* v. *Board*, 41 Miss., 236; *Brabham* v. *Supervisors*, 54 Miss., 363), nor any suit until the board had first refused to allow the claim (*Supervisors* v. *Brookhaven*, 51 Miss., 68; *State* v. *Banks*, 66 Miss., 431), nor any action on a county warrant (*Klein* v. *Supervisors*, 51 Miss., 878). That statute, which is substantially the same as § 1384, code 1871, and § 2175, code 1880, and §§ 290 and 292, code 1892, did not and does not allow any suit on this paper, for the reason that the statute is, and has always been, so framed as to allow of suit in those cases only where the board of police, or supervisors,

have jurisdiction to order the payment of a claim, if a just claim, and to expend the money needed to discharge it, if allowed conformably to law.  There is a plain distinction between claims which, if in themselves just, the board of police could allow and order paid out of the moneys in the hands of the county treasurer, on the one hand, and those claims which, although just, the board of police had no jurisdiction to allow or order to be paid out of such moneys in the county treasurer's hands, on the other.

This section of the code was so drawn that those cases in which a suit was authorized were such cases, but such cases only, as the board of police were authorized to allow, and authorize to order paid by a warrant directed to the county treasurer, whereby he should be commanded to pay the same out of the general county funds.  In no other cases could such a suit be brought, and this was not such a case.  The invariable result, as prescribed by the statute itself, of a presentation and allowance to the board of those demands with which the statute was dealing, was the allowance of a general warrant, payable by the county treasurer, and if the holders of this class of paper could avail themselves of that statute, the result would be that they would necessarily come out with a warrant payable out of the general county funds, while their contract was special and their compensation provided for out of a special fund, which would be in direct contravention of the principle of the cases quoted above.

It is claimed that the board of levee commissioners was a corporation, and could have been sued as such.  We deny it.  We admit that a corporation may be created by implication; but the act must evince an intention to grant corporate powers.  1 Dillon on Mun. Corp., sec. 42; *Stebbins* v. *Jennings*, 10 Pick., 172.  The statute shows that it was clearly not the intention of the legislature to incorporate the levee inspectors.  But, even if a corporation, still they could not have been subjected to suit on this paper.  The act of creation is a corporation's law.  The

board was created in 1850.   It was not until seven years later that a board of police, a body of similar nature, but with much more varied and comprehensive powers, could be sued.   Is it credible that the legislature would subject a county to suit, through its minor organizations?   Exemption from suit is an attribute of sovereignty.   This board was organized by the state to accomplish a public purpose, and could exercise, to that end, a part of the state's prerogative; but if, while engaged in that work, as a part of the state's organism, it was to be sued by common creditors, that liability must clearly appear in the statute. The special attitude of the matter is, that the levee districts then established by law were the counties themselves; wherefore, every levee liability was a county liability.   If any suit could be brought thereon, whoever might be the nominal defendant, the judgment recovered would be, in effect, a judgment against the county, and would be collectible out of county assets—special county funds, perhaps, but county assets none the less. Now, it is settled law that county funds cannot be seized by execution, unless a statute expressly authorizes it.   1 Dillon on Mun. Corp., sec. 100; *Municipality* v. *Hart*, 6 La. Ann., 570. This statute does not authorize it; on the contrary, it expressly provides that none of the fund shall be paid out except on an order drawn by the inspectors.   Is there any reason in saying to a creditor in one breath, "You must reduce your demand to judgment or be barred," and at the same time, "When you get judgment, you shall not execute it?"   If the board of police could not be sued, how could the levee inspectors?   Both were county boards, discharging county functions, in some respects similar, as in case of roads and bridges.   So far as they differed, the board of police had the more extensive powers.   No course of reason can be soundly urged which will lead to the conclusion that one board could be sued while the other could not, until the act of 1857 is taken into consideration, and that act we have considered above.

   Another view: The principle of *Taylor* v. *Chickasaw County*,

70 Miss., 87, we submit, applies to this paper. The same reasons which took the paper sued on in that case out of the operation of any statute of limitations, takes this paper out of such operation. To put it differently, the same reasons which make the one class of paper nonsuable make the other nonsuable also. Appellee controverts this proposition and distinguishes. It contends that a county warrant is a piece of county scrip, issued by the clerk merely in his ministerial capacity, based on and deriving its efficacy from a judgment of the board of police (or supervisors), which is a judicial court, ordained by the constitution, and that it is this judicial ascertainment of a county liability which exonerates the owner from the operation of the statute of limitations; that the paper now in suit has not been so judicially passed, and, therefore, it is not exonerated.

This position of the appellee is erroneous. It grows out of a misapprehension of the true purport of *Klein* v. *Supervisors*, 58 Miss., relied on by them. True, in that case, it is said that the paper involved could be sued on, and that the rule prohibiting suits on county warrants did not apply, for the reason that the so-called warrant there presented had not been issued in settlement of a claim "judicially allowed." The court, however, by that statement, meant nothing more than this: that, under the law as it was framed in our code, the board of supervisors could issue no county warrant, except after a judicial passage upon the justice of a claim presented against the county. Therefore, any paper issued by order of that body, without such judicial ascertainment, was not a county warrant in legal effect.

We do not question that decision. But why? Simply because the legislature had ordered, in the law, that that was the only manner by which that tribunal could issue a warrant. But there is no peculiar sanctity in a county warrant. There is no super-legislative and inherent necessity in its constitution. A county warrant is just what the legislature sees proper to ordain it to be; and because the legislature has seen proper to

order that the board of supervisors shall not issue a county warrant, except upon a judicial passage, it by no means follows that the legislature is without power to establish another body of a different nature, and authorize it to issue paper, which, in legal effect, would be a county warrant, without any judicial ascertainment.   The true question is whether the paper in this case has been issued lawfully by a tribunal lawfully authorized; and, being so issued, whether it does charge a debt upon the county.   This paper fulfills all of those conditions.   The act of authority provides that a majority of the inspectors should issue the order upon proof; and, when issued, it should be paid out of a special fund, but a county fund, nevertheless, whereby a liability was imposed upon the county to provide that fund. It makes no difference whether that tribunal be called a court or a mere board or a commission; nor any difference whether its power is judicial in its nature or quasi-judicial or executive. It was authorized, and it acted; and the matter could go no further until the board of police should, in its turn, discharge the duty imposed on it by law, and collect the taxes with which to pay.    *Yalobusha County* v. *Carbry*, 3 Smed. & M., 529; *Johnson* v. *Towsley*, 13 Wallace, 72; *United States* v. *Wright*, 11 Wallace, 648: *Brown* v. *Jackson*, 7 Wheat., 218; *Lynch* v. *De Bernal*, 9 Wallace, 315; *National Bank* v. *Bank*, 94 U. S., 347; *Merrill* v. *Sherburne*, 1 N. H., 199; *Jones* v. *Perry*, 10 Yer., 69; *Telgraph Co.* v. *R. R. Commission*, 74 Miss., 80, 92.

This paper, being issued by such authority and under such conditions, imposed a liability on the county no less than a so-called "county warrant;" and every reason whereby the one class of paper was nontaxable, and consequently whereby the statute of limitations did not run against it, is applicable to the other.   The outcome of all the various holdings on that subject by this court is this, and it is perfectly simple: (1) The statute does not run against a claim until it is presented to the board (*Miller* v. *Hinds County*, 68 Miss., 88); (2) the statute does not run against a claim even when presented, if allowed;

(3) the statute runs against a claim only when it has been presented for allowance, and such allowance has been refused; (4) delay in such presentation does not put the statute into operation, notwithstanding the dictum in the Miller case. See precise point made in Orr's brief and rejected in this court in *Taylor* v. *Chickasaw County*, 70 Miss., 87, Judge Cooper saying "a claim not barred by the statute of limitations is not a stale claim." These simple propositions, connectedly stated, are ample answers to all of the objections of counsel for the appellee. This paper is a county liability, issued conformably to law. It evidences a county debt. It is a debt of that class which the board of supervisors has no jurisdiction to allow, because not payable out of any fund on which they had a right to draw. Moreover, it has never been presented for allowance to them and never rejected by them. The nonpresentation is alone an answer to the statute of limitations. The appellee complains that the paper is void because made payable at a bank in Vicksburg. That is immaterial. It is only in those cases where a change of the place of payment away from that place contemplated by law produces some material change in the legal effect of the instrument that this question has ever been deemed worthy of serious consideration. The difference between the county site of Issaquena county and Vicksburg, as the place of payment, was nothing. *Sherlock* v. *Winetka*, 68 Ill., 530; *Enfield* v. *Jordan*, 119 U. S., 680; *Meyer* v. *Muscatine*, 1 Wall., 384; *Mattox* v. *Graham*, 2 Metc. (Ky.), 56; *Vicksburg* v. *Lombard*, 51 Miss., 111.

*James R. Yerger* and *Frank E. Larkin*, on the same side.

The right of Meath and his assigns to have the tax provided for in the act of 1850 levied and collected, will not be held to be taken away by the act of December 2, 1858, by implication, since the latter act could not, though its terms had been express, have deprived Meath and his assigns of vested rights. *Memphis* v. *United States*, 97 U. S., 293; *Memphis* v. *United*

*States*, 97 U. S., 284.   Manifestly, the act of 1858 conferred a privilege on creditors of the local levee boards of accepting the liability of the district board, by substitution for the former debtor; and the holder of this scrip could have surrendered it and accepted in lieu thereof the scrip of the district board, but this privilege was never exercised by the holder of this scrip, who saw fit to hold his original debtor.

The terms of the act of 1858 do not attempt to compel the holder of the scrip of local boards to accept the privilege offered on the penalty of release of the original debtor, and any such attempt would have been futile under the authorities cited.

The act of February 13, 1867, creating a board of commissioners, with power to assess, levy and collect a tax for the purpose of discharging the indebtedness due by the several local boards, and by the district board created in 1858, recognized the validity and obligation of scrip of the class mentioned in the petition, by the first section of said act, and extends the privilege to the holders of scrip of the local levee boards, upon registration of claims, to accept in substitution therefor bonds to be issued by the liquidating board.   No compulsion is attempted, and no penalty inflicted for failure to accept the provisions of the act, but it is declared that unless the holder of the scrip register the same and release all interest, and accept the bonds of the liquidating board for the face of the principal indebtedness, and surrender the scrip held, that the holder of the scrip refusing to comply with these conditions, shall not have any of the benefits conferred by the act.

We have not been able to find any enactments, save those mentioned, which relate to the class of scrip in question, or which attempted to deprive the holders of said scrip of any right vested in them, or to bar the enforcement of such claims by any period of limitation.   The act of December 7, 1870 (acts 1871, p. 65), recites that certain warrants on the treasurer of the levee fund of Issaquena county had been allowed by

the judgment of the board of police, on May 1, 1869, and that the board had ordered a levy of the tax to pay the same, and this act orders the collection of such tax for that purpose. This act of 1870 is a recognition of the then existing obligation, in 1869 and 1870, of the warrants of this series, also of their obligation upon the county.

The scrip mentioned in the petition was, in legal effect, a county warrant. Though it was not payable out of the general county fund, it was payable out of a special fund derived from a tax charged against the lands of Issaquena county, and in the hands of a special treasurer. No sound distinction can be made between a county warrant and the scrip in question. However, this scrip was payable out of a special fund, and until this fund was realized it could not be paid. The acts of 1850 and 1857, under which the work was done and the scrip acquired, provided that levies of taxes should continue to be made annually until all such debts should be paid, and such levies can now be demanded and compelled, manifestly, unless the bar of some statute of limitation has attached.

The board of inspectors provided for by the act of 1850 were not required to keep any minutes of their proceedings, and their allowance of a claim was evidenced by an order given for its payment. The issuance of the order was a judgment, as is the order of a board of supervisors directing the issuance of a county warrant. The board of inspectors was an agency for the accomplishment of a certain purpose—the protection of the lands of Issaquena county from overflow. By the acts of 1850 and 1857, the administration of county affairs in Issaquena county included the construction and maintenance of a line of levees, and the board of levee inspectors was charged with the work of making contracts, and of paying debts incurred, and of passing upon all claims for work and labor done under any contract it has made, and its allowance of a claim was a judgment rendered for the payment of such claims out of the special fund derived from the levy of taxes fixed by the act, or which

should be derived by levy thereafter to be made. Therefore, for the reasons above stated, appellants charged facts which impute an obligation on defendants to allow the claim made, and to assess and levy a tax to pay it, if the board of supervisors succeeded to the duties of the board of police.

By the act of June 3, 1870 (Laws, 1870, p. 80), it was enacted "that all laws in force in this state on the first day of December, 1869, in which the words 'board of police' or 'boards of police' occur, be, and the same are, so amended as to read 'boards of supervisors' or 'board of supervisors' (as the case may be) instead thereof." The acts of 1850 and 1857 are, therefore, now in force, and are to be read as if "board of supervisors" is incorporated therein, wherever "board of police" occurs, for we have shown that the acts mentioned have never been, nor could have been repealed, so far as same affected the rights of appellants. If those proceedings could have been maintained against the board of police, if boards of police were still in existence, we must prevail in the proceeding against the board of supervisors.

The second ground of demurrer claims that the petition shows, on its face, by the terms of the act of the legislature under which it predicates the claim, that it is barred by the statute of limitations of three years, and of six years, and of seven years. There is no statute of limitations embraced in the act of February 1, 1850, nor in the act of 1857, nor in any act, so far as we have been able to find, amending these acts. As said by Judge Campbell, in *Miller* v. *Hinds County*, 68 Miss., 88, "statutes of limitations are not to be applied to cases not embraced by them." If the order was a judgment, then no statute would be applicable except the seven year statute, and for the reasons given in the decision of *Taylor* v. *Chickasaw County*, reported in 70 Miss., 87, this statute could not be invoked by the defendant, as no execution could be issued on a judgment of county authorities allowing a claim. If the claim was not a judgment until the code of 1892 was enacted, no statute of lim-

itations ran in favor of a county against a claim, until the claim had been presented to board of supervisors, and allowance sought. Section 2736, code 1892, is prospective in its operation, and it enacts that statutes of limitations shall begin to run in favor of the counties when the claim might have been presented to the board of supervisors. The period of limitation for each class of claims is to be determined by the other sections of the chapter which embraced this section. An open account against the county will be barred when three years have elapsed from the time when it might have been presented, and a claim acknowledged in writing will be barred when six years have elapsed from the time when such claim might have been presented. The claim of appellants was presented to the board of supervisors of Issaquena county within three years from November 1, 1892. It was, however, a claim acknowledged in writing, and there is no necessity for its presentation to the board, save within six years from the time when the code of 1892 went into effect.

*Culhoon & Green,* for the appellees.

The levee commissioners did not constitute a court, and therefore had no power to issue warrants on a county treasurer, which must have a judgment to support them. They had none of the properties of courts, and were not designed to have any. No power outside the law can be given them by judicial construction. They could issue orders on their own treasurer, but such orders were bills of exchange under the law, and subject to the statute of limitation of six years. Code 1857, pp. 356, 399; Hutch. code, 639. A county warrant is not, and cannot be, time paper, while these orders are time paper, bearing interest. A county warrant is a check on a deposit supposed to be in the treasury, and is the act of the clerk in pursuance of a judgment of the board of police, duly entered upon its minutes. It is not an evidence of debt, and cannot be sued on. *Klein* v. *Supervisors,* 51 Miss., 878; *Polk* v. *Supervisors,* 52

*Ib.*, 422. A judgment, or order of allowance of a county warrant, is the evidence of the debt; the warrant itself is a mere authorization to the treasurer to pay, and operates as his voucher. It has been held that the statute of limitations do not apply to claims against counties which are required to be audited and allowed, because by a statutory omission no limitation provided fits such a case; but these orders are not warrants.

It is urged, with great earnestness on behalf of appellants, that there was no legislative intent that the holders of these orders should have any claim on the general county funds, but it by no means follows that the board of police were therefore conclusively bound, as upon a recorded judgment, to levy a tax for their payment. No authority has been, or can be, shown for the issuance, by these commissioners, of interest-bearing bills of exchange payable out of the county treasury. Section 9 of the act of 1850, so greatly relied on by appellants, does not refer to work done in constructing levees, but a different character of work, and in recognition of this the petition bases the claim of appellants solely on section 6 of that act.

The law calls the instruments in suit " orders " and not warrants. In every case where it means warrants it says warrants. The "orders" were bills of exchange under the law then in force (code 1857, p. 356, art. 4; Hutch. code, p. 639, clause 3), and the special act in question warrants such orders as are there named, and not to make them solemn judgments of an ambulatory board to bind anybody as adjudicators. If the "orders" were not judgments, it is not debatable that the statute of limitations runs against them, and not debatable that they had to be presented and protested for nonpayment. Note the statute then in force (code 1857, p. 399, art. 5): "All actions  .  .  .  upon any promissory note, bill of exchange, contract  .  .  .  shall be commenced within six years  .  . and not after."

The orders are bills of exchange. Code 1857, p. 356, art. 4: " Where any person or persons, body politic or corporate,

shall, by orders, in writing, direct the payment of any sum of money, the sum . . . shall be due . . . and may be put in suit by the drawee thereof against the drawer, if accepted," etc.

The claim in this record would be a stale claim under the old equity rule, regardless of the statute of limitations, and, under the common law, before any statute of limitations, the presumption of payment would apply. It is true that Judge Cooper, in *Taylor* v. *Chickasaw County*, 70 Miss., 90, concludes his opinion in a case at law with these words: "Claim not barred by the statute of limitations is not a stale claim," and he cites *Westbrook* v. *Munger*, 61 Miss., 329, an equity case. His remark in this concluding paragraph was inadvertent. Staleness was a characteristic of equity rulings, and not known at common law. Chancery courts threw out very old claims unless the delay was thoroughly explained. It was held inequitable to sleep for twenty years, and then sue a man on so old a complaint. After statutes of limitations were created, equity gradually conformed to the law, which formerly had no application to equity proceedings. Now our statutes are expressly adapted to both courts. But, at common law, twenty years constituted a conclusive or legal presumption of payment, and this is not at all interfered with by the statute of limitations. The exception at law was a duly enrolled judgment on the minutes of some court of record. All this is hornbook law, and so we say, confidently, the nearly forty years old claim in this record, on the very statement of the petition, is presumed to be paid, and, under the agreement of counsel, reached by the demurrer. Wherever there is no recorded judgment, the presumption of payment applies, and no case can be imagined calling more thoroughly for its application than the one at bar.

We beg to repeat the axiomatic principle that the power to contract carries with it necessarily the power to sue and be sued, and so, if the commissioners had any power to make these particular orders, which we deny, they could have been sued

upon them, and, if sued, any taxpayer in interest could have made defense, and have shown fraud or failure of consideration; and, therefore, the statute of limitations ran. School boards might sue and be sued, though not so expressly authorized. *Connell* v. *Woodward*, 5 How., 665; *Carmichael* v. *Trustees*, 3 How., 84.

It is strange this court should be now requested to adopt a liberal construction of laws against the public, when all the authorities hold that it should be liberal in favor of the public. Where is the power, express or incidental, here? Why did not the statute of limitations run? Its terms cover all cases and this case. There is widespread ruin in liberal construction; there is safety in strict construction. The statute of limitations is broad enough to cover this case in its terms. It is for adverse counsel to show why it should be excepted, and exceptions are not to be engrafted on it by construction.

The reason the statute did not run against claims before presentation to and refusal of payment by boards of police, was as stated in the Miller case, because no "action" could be brought until after presentation and refusal of payment. It was simply a *casus omissus* in the law, since cured by code of 1892. A warrant could not be sued on because it was for payment in pursuance to a judgment, and only another judgment could be had, and another warrant, as in case of auditor's warrants. Here a cash payment, not an order, could be had. No such conditions of things exists in the case at bar. The statute applies wherever it can apply, and it applies here, where there is no judgment of a court of record, and where suit could manifestly have been brought on a valid claim for levee services on a contract, at any time before or after presentation to the levee commissioners. But here, besides all this, if there was a valid claim, contract performed, and the law complied with, mandamus could have been brought against the third party, the board of police, to compel the "levy of a tax," and in such case, mandamus is "an action," and should have been seasonably invoked, or it is

barred.    Even mandamus must be barred on a judgment, and not on a warrant, as all our decisions hold.    We confidently assert, without fear of successful contradiction, that, if a board of police had been authorized by law to issue bills of exchange, they would have to be presented for payment and protested, and that they might be sued on in an action at law, and the statute of limitations would run, though it is unnecessary to go to this length.    In this case there could have been, if the claim was valid, judgment, execution, and levy on any tools, implements or property or land of the board of commissioners, or the garnishment of any money in the bank of Wirt Adams & Co., or elsewhere.

In other states actions may be brought on county warrants, where the statutes do not prevent, as here.    Beach on Corp. That the presumption of payment is conclusive after twenty years, "though the statute be not pleaded."    See Angell on Lim., sec. 78 and note, and *Ib.*, sec. 92 and especially *Ib.*, sec. 93.    "By common law the lapse of twenty years, without explanatory circumstances, affords a presumption of law that the debt is paid, even though it be due by specialty."    1 Rice on Ev., 70, citing cases, and *Gaines* v. *Miller*, 111 U. S., 395. We say a county warrant would be presumed paid after twenty years, if suable, though not, perhaps, the judgment on which it is barred.    Some county warrants are suable.

Did not Meath have to present the orders for payment at the banking house of Wirt Adams & Co., at Vicksburg, before calling on the board of police to levy a tax to pay them?    If yes, the whole question is settled.    But suppose he had presented them at the banking house and the bank refused to pay them, by instruction of the levee commissioners, because the work did not come up to the contract, what then?    Might he not then sue?    Without suit, could he call on the board of police to levy a tax to pay the orders before a court had settled the differences between the contracting parties?    The state auditor is not authorized to contract.    He can merely issue a cash

warrant.    Besides, levy cannot be made on state property.
School trustees, because they might contract, might sue.    *Connell* v. *Woodward*, 5 How., 665, 671; *Carmichael* v. *Trustees*,
3 How., 84.

We ask the special attention of the court to *Ballard* v. *Davis*,
31 Miss., 525, referred to by counsel, holding that levee commissioners were powerless to act, except upon full compliance
with the statute.    The petition for mandamus here does not
aver the jurisdictional facts, and such averments are required,
and the minutes of courts of limited jurisdiction must show them.

It is significant to note that, in a bill for injunction against
the board of police, in a matter involving the power of these
levee inspectors against levying a tax, averring that they did
not make and report to the board of police ''an estimate of the
probable cost of the work,'' Judge Handy said that this was
denied by the answer, showing that he regarded this essential.
*Williams* v. *Cammack*, 27 Miss., p. 215.    In the petition at
bar no such averment is made.    Judge Handy again, on page
216, 27 Miss., states that it appeared by an exhibit in the record that ''the levee commissioners made their estimate and report to the board of police, which was received and acted upon
by the board.

It is conclusive of this case that the levee treasurer had to
give bond, and the title to lands sold for delinquent taxes vested
in him, and might be levied on, and the inspectors were, like
school trustees, '' created by the law for particular and specified purpose,'' as the court said in *Connell* v. *Woodward*, 5 How.
(Miss.), 671; *Carmichael* v. *Trustee*, 3 How. (Miss), 84.    So,
like school trustees, the inspectors could sue and be sued.    The
trustees of the state asylums are precisely similiar.    They cannot exceed the *per capita* appropriation.    They cannot bind the
state by contracts *in futuro*.    Such an act would manifestly be
null and void.    Counties could be sued before the code of 1857,
in the way marked out by statute—that was, by presenting the
claim or demand ''to the board of police, and, in refusal to

pay, by appeal." This did not extend to torts, on grounds of public policy. There is in the petition not even an averment that the account was "sworn to and passed," as the statute requires.

Argued orally by *Edward Mayes*, for appellant, and by *S. S. Calhoon* and *Marcellus Green*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

Responding to the request of counsel to determine the questions which are vital, we proceed at once to the merits. The scheme propounded by the act of February 1, 1850 (Laws, p. 214), as amended by the act of November 19, 1857 (Laws, p. 87), was this: A board of levee inspectors for Issaquena county was created by the 'act, called in section 8 "commissioners." That board had a president, and levee treasurer, and its duties were "to examine and designate the lands where levees were necessary to be erected, for the general good; to lay out the line of said levee or levees, and to determine their extent; to contract for the building of the same, as herein provided for; to superintend the construction of the same; to see that the work was properly executed, and to prescribe the manner of doing it, the line at which it should be commenced and completed; and, generally, to do whatever else they may deem necessary, in order to have the same completed in the best manner and at the least expense to the public." Section 1 of said act. Said board was to examine and lay out the best route for a levee from the upper line of said county to the lower line of the same; to employ, by contract or otherwise, a competent engineer to make the survey and location; to estimate the probable cost of said levee, and report the same to the president of the board of police. The board of police was then to levy a tax of not exceeding ten cents per acre on all lands in said county subject to taxation, and annually thereafter, at such time as they might deem expedient, a

like tax, until the amount of the tax should be sufficient for the erection of said levee and payment of all expenses incident to the same, or arising from the provisions of said act. The report and estimate of the board of levee inspectors was to be filed in the office of the clerk of the board of police, as a guide for the board of police in levying the tax. This tax was made a lien upon the lands in the county to the same extent to which they were liable for state and county taxes, and any lands in the county could be sold for nonpayment of this levee tax. Section 4 of the act. The board of police (section 6), as soon as the survey was completed, and the report of the location made to it, was to divide the levee into sections, and designate the sections first to be erected; the board of levee inspectors was then, as soon as practicable after such designation of the sections first to be built, to " cause the same to be erected, by contracts or otherwise, as they should deem best,   .   .   . and, if by contract, should designate the line where the same should be completed, and should pay from the levee funds in the hands of the treasurer [the levee treasurer], the amount due upon such contracts, and all expenses incurred in the erection of said levees, etc., by an order signed by a majority of said board." And in section 9 it is provided that " said board might issue orders on said treasurer of said levee fund, payable six, twelve or eighteen months after date, for work done on said levee," which orders, says the section, " shall be accepted by said treasurer, and when by him accepted, shall, when due, be paid out of any money in said treasury not otherwise appropriated."

The two orders in this case were manifestly drawn under the clause just quoted, as their face shows, and the board of inspectors clearly have the right to draw them, though there were no funds in the hands of the levee treasurer when drawn, against money to be in his hands, when due, which money the board of police was to raise by the tax, and out of this money, when raised, the orders, when due, were to be paid. This

section 9 completely disposes of the contention that the board of inspectors could not draw orders except against funds then, at the time they might be drawn, in the hands of the levee treasurer. The board of inspectors was a special tribunal created for the purpose of constructing the levees. To it was delegated the power to make all contracts touching that subject-matter, and having made the contracts and issued the orders, in compliance with the statute, for work done on the levee, and those orders having been accepted by the levee treasurer, the orders were, in effect, county warrants, and the board of police has no discretion as to paying them. It was its mandatory duty to levy the tax and pay the orders, no fraud being shown; and the case is now here on demurrer only.

The board of levee inspectors created by this act was as much a county agency within the sphere of its powers, as was the board of police within the sphere of its powers. The board of police issued warrants for all proper claims touching ordinary county matters, and the board of levee inspectors made contracts and issued orders, and it alone, "for work done on levees"—an item of extraordinary county expense. These orders thus issued by this special county agency for this extraordinary expense, were as truly county obligations, under this particular act, as were ordinary county warrants under the general law. The taxes to pay them were levied on all the lands in the county, and were a lien on all the lands in the county. The collection of these taxes was to be made through the board of police and the ordinary fiscal agents of the county, but they were to be paid out only on the order of the board of inspectors, who alone had the power to do all else, save the designation of parts of levees first to be built, that in any way related to the construction of the levees, and the making payment of contracts relating thereto. It, and it alone, was the county agency touching the contracts and their payment; the orders were therefore a county debt, and to be paid by these taxes, and were a lien on all the lands in the county.

It was not competent for the legislature, if it had attempted it, to substitute another debtor, or a different security, without the consent of the owners of the orders.     But we do not think this was attempted.    The change in the machinery for the administration of the levee matters, whereby the board of levee commissioners was created, expressly provided that the local board of levee inspectors should be retained in Issaquena county for three years, to pay all debts for levee work done, and that such debts remaining unpaid were to be assumed and paid by that board.    But the owners of these orders were not required to accept this new scheme of payment if they preferred the old, nor were they required by the fourth section of the act of February 10, 1860 (laws, p. 434), to surrender these orders for general levee scrip, nor to be barred if these orders were not registered by November 1, 1860.    That act did not provide that claims not presented should be barred, but declared an order of priority in accordance with which claims or scrip should be paid.    And the act of February 13, 1867 (see sections 1 and 5, p. 244, of laws 7 and 12), provided that those who had "demands" should present them to the secretary of the general levee board, on or before the first day of June, 1867, in order to share in the benefits of that act, and payment out of moneys collected under its provisions.    But these orders had become county debts long before, at a time when the system of district leveeing was unknown, and under this particular act, which expressly made them county debts, and secured them by taxes, made a charge on all the lands in the county. The county remained the debtor, and taxes on all its lands a security therefor, notwithstanding the act of 1867.     There are in the legislation subsequent to the act of 1850 many instances of recognition of claims like these as county debts. The holders of these orders held under this contract, might, and were entitled to, hold the same debtor, and to look to the same security provided specifically by the law of their contract, and we do not think legislation did, or could if it had attempted

it, impair their rights fixed and vested under the act of 1850, section 9. To protect such statutes against the inhibition of the constitution, against impairing the obligation of contracts, it is essential that they should neither take away nor impair any vested right. No presentation to the board of supervisors was necessary. Being of equal dignity with the usual county warrants, and, in essential nature, themselves county warrants issued by the board, which alone had the power to issue them, and being about a matter committed exclusively to it, they are to be treated just as county warrants. It follows, also, that they are not barred. See *Taylor* v. *Chickasaw County*, 70 Miss., 68, and authorities there cited.

Being, in their essential nature, county warrants, though not of the ordinary kind, we do not think they bear interest. The county, a local subdivision of the sovereignty, cannot have the burden of interest imposed on it, except by statute either expressly authorizing such burdens, or by clear and necessary implication warranting it. Section 9 does not expressly authorize interest. Nor does it clearly and necessarily, by implication, authorize it. The holder of these orders, accepting them, to be paid six, twelve, and eighteen months from date, may well have taken them, expecting only to receive the principal amount named at these defined dates, because only then was it contemplated that there would be money raised by taxation to pay them. He may well be treated as having contemplated that he could only be paid at the end of the periods named, for the reason that no funds were then on hand, and that the sum required to pay could only be raised, and that sum precisely as named, without interest, by the accrual of the periods named. And we think this was the meaning of the statute, and the contemplation of the parties to the contract culminating in the warrants. *Board* v. *Klein*, 51 Miss., 816. Warrants issued upon the allowance of a claim, whether by the board of supervisors in the ordinary way, for current demands, or by a special county tribunal on extraordinary demands committed by the legisla-

ture exclusively to it, both being in their essential nature county warrants, are not judgments or contracts in the literal sense of these terms, within the meaning of our statutes allowing interest. *Dyer* v. *Covington*, 19 Pa. St., 201; *Board* v. *Klein, supra*. See also, *Camp* v. *Knox Co.*, 3 Lea (Tenn.), 199; *Hall* v. *Jackson Co.*, 95 Ill., 353. The interest question was not presented or decided in *Klein* v. *Board*, 58 Miss., 543. The claim there was refused allowance by the board of supervisors, and the decision was merely that suit could be maintained. The interest feature passed *sub silentio*.

*The judgment is reversed, the demurrer overruled and the cause remanded.*